# AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, David F. Simmons, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), being duly sworn, depose and state as follows:

## INTRODUCTION

1. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. In particular, I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been so employed since 2015. I am currently assigned to the Boston Field Division's Bridgewater, Massachusetts Field Office, and was previously assigned to the Miami Field Division in Doral, Florida. Prior to becoming a Special Agent with ATF, I was employed as a Police Officer in Massachusetts for approximately nine years. During this time, I spent approximately one year as a detective, where I investigated various offenses to include narcotics offenses and received training in conducting advanced criminal investigations.

2. As a Special Agent for ATF, some of my duties include: conducting criminal investigations into cases of illegal possession/transfer of firearms, firearms trafficking, and violent crimes involving firearms and narcotics trafficking. I have participated in numerous investigations relating to the distribution of controlled substances, including cocaine, heroin, marijuana and other substances, in violation of state and federal drug laws, including 21 U.S.C. § 841 and 21 U.S.C. § 846. Through my training, knowledge, and experience, I have become familiar with the habits, methods, routines, practices and procedures commonly employed by persons engaged in the trafficking of illegal firearms and narcotics. I have been the affiant on numerous affidavits in support

of federal and state search warrants, arrest warrants, and other applications. I have participated in performed surveillance and made arrests of firearm and narcotics traffickers who utilize their electronic devices to further their illegal activity. During the course of my professional experience, I have interviewed numerous defendants, witnesses, victims, confidential informants, and other police officers regarding the illegal trafficking of firearms and narcotics.

3. I submit this affidavit in support of a criminal complaint charging GIOVANY FOUYOLLE a/k/a "Charlie" with knowingly and intentionally distributing 40 grams or more of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, also known as fentanyl, a Schedule II controlled substance.

4. The information set forth in this affidavit is based on my own investigation and information provided to me by other law enforcement agents. This affidavit is not intended to set forth all of the information that I have learned during this investigation, but only facts I believe are sufficient to establish probable cause in support of the issuance of a criminal complaint charging FOUYOLLE with violating 21 U.S.C. § 841(a)(1) and 841(b)(1)(B)(vi).

**FACTS SUPPORTING PROBABLE CAUSE**

4. On July 13, 2018, an ATF undercover special agent [hereinafter "UC-1"] made a controlled purchase of fentanyl from FOUYOLLE in Stoughton, Massachusetts.[1]

---

1 According to information from Randolph Police Department, FOUYOLLE is a member of a violent street gang known as the No Fear Ones ("NF1"), based in Randolph.

5. On July 11, 2018, UC-1 attempted to reach FOUYOLLE by text message, with no response. At 7:51 pm,[2] UC-1 received a telephone call from FOUYOLLE using telephone number 857-230-9751, which was not recorded. UC-1 requested "six" on Friday [July 13, 2018], by which UC-1 meant 60 grams of fentanyl. FOUYOLLE told UC-1 to call him on Friday.

6. On July 13, 2018, UC-1 had the following text message exchange with FOUYOLLE on telephone number 857-230-9751:

| | |
|---|---|
| UC-1 at 6:51 am | "I will be good bout 12 does that work" |
| FOUYOLLE at 10:25 am | "K" |
| UC-1 at 11:25 am | "I am good in about 10 and going to head to McDonald's" |
| FOUYOLLE at 11:28 am | "k" |
| UC-1 at 11:29 am | "I am on my way. On my bike so cant answer phone" |
| FOUYOLLE at 11:44 am | "k" |

7. Following that exchange, agents prepared for the controlled buy.[3] At 11:50 am, UC-1 arrived at McDonald's and parked. UC-1 had the following text message exchange with FOUYOLLE on telephone number 857-230-9751:

| | |
|---|---|
| UC-1 at 11:52 am | "Here" |
| UC-1 at 11:53 am | "Not on drive through side people working on tgat side" |
| FOUYOLLE at 11:54 am | "ok" |
| UC-1 at 11:54 am | "You close need to make this quick and get back to work" |
| FOUYOLLE at 11:56 am | "Yea"   "Be rite there" |

---

2 All times are approximate.
3 UC-1 was equipped with audio-video recording equipment.

8. At 12:09 pm, UC-1 made a telephone call to FOUYOLLE on telephone number 857-230-9751, which was not recorded. UC-1 asked FOUYOLLE where FOUYOLLE was. FOUYOLLE told UC-1 to follow him. UC-1 then saw FOUYOLLE driving a white Ford pick-up truck, bearing Massachusetts registration 8AV713 [the "white Ford"], which had just entered the parking lot.

9. UC-1 followed the white Ford out of the McDonald's parking lot and left onto Washington Street. The white Ford turned left on Lincoln Street and, at 12:12 pm, into a driveway at 194 Lincoln Street and then backed into a parking spot at the rear of the building. UC-1 followed the white Ford into the parking lot, parked its vehicle, and approached the white Ford on foot, stopping at the passenger side window.

10. UC-1 handed FOUYOLLE $2,100 in official agency funds.[4] FOUYOLLE handed UC-1 a clear plastic bag containing a white powdered substance. The following exchange took place:

UC-1: "What's up bro? I need to get back right to work. Six, right?"

FOUYOLLE: "Yup"

UC-1: "Hey listen, I need to do this more regular now cause of my girl."

FOUYOLLE: "Alright, cool"

FOUYOLLE then left in the white Ford.

11. The plastic bag containing the white powered substance was submitted to the DEA Northeast Laboratory, which concluded that the contents were 58 grams of a mixture and substance containing fentanyl.

---

4 I am familiar with FOUYOLLE's appearance and have reviewed still shots from the video recording of this transaction. I recognized FOUYOLLE as the person who met with UC-1.

**CONCLUSION**

12.     Based on the foregoing, I believe probable cause exists to believe that, on or about July 13, 2018, FOUYOLLE knowingly and intentionally distributed 40 grams or more of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, also known as fentanyl, a Schedule II controlled substance.

_____
DAVID F. SIMMONS
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to before me this 11th day of October, 2018.



_____
HON. M. PAGE KELLEY
UNITED STATES MAGISTRATE JUDGE